May it please the Court, good morning. My name is Hartley West. I'm an assistant U.S. attorney here in San Francisco, and I represent the United States in this matter. We have raised two issues on appeal regarding the District Court's sentencing determinations. First, the District Court clearly erred in granting Mr. Prevett a downward adjustment for acceptance of departure. The circumstances that we have here in this case are simply not what the guidelines contemplate for an acceptance of responsibility. As this Court – You said acceptance of departure. You meant acceptance of responsibility, did you not? Oh, I did. Thank you. Okay. For acceptance of responsibility. As this Court noted this year, indeed, Your Honor, Judge Gould, in the Day Child case, the primary purpose behind the acceptance of responsibility adjustment is to encourage accused to admit wrongdoing and spare the government the expense, burden, and risk of prosecuting. What issue did you have to prove that you wouldn't have had to prove in any event, in this case, because he did what he did at the time he did it? Well, the primary issue at trial was the key factual element of the defendant's intent, his mens rea, in that he possessed the intent to defraud, which is required for an insider trading case. Now, Mr. Prevett contested that at trial by attempting to introduce evidence in the form of witnesses and tried to offer at trial to establish that he traded for entirely independent reasons of the information. Justice Ginsburg, do you now concede that Mr. Prevett conceded his fraudulent intent at trial before his sentencing? Oh, absolutely not. And why not? Well, during trial, he offered a witness in order to show that he did not have the proper state of mind. That witness was David Semak, showing that he could have bought much more stock than he did if he were really trying to conduct insider trading. In addition, throughout closing argument, Mr. Prevett's attorney argued repeatedly that Mr. Prevett did not have the requisite intent to defraud. Let's assume we're going to decide this case on the record. What does the record show about the trading window? Did they have a trading window that closed at a certain time? I'm sorry? Was there a trading window that closed at a certain time at his company? Well, in this case, there was a trading window that would – there was one person who was responsible for announcing to people to remind them whether, in fact, the trading window was closed, and there were various occurrences that could prompt a window. I assume that's the answer, yes? Yes. What caused the trading window to close? In this instance, it would – In general. Well, in general, it could be a number of factors. It could be the announcements quarterly in the 10 Qs, or it could be the announcement of material or the possession of material nonpublic information, and that's what occurred here in an email. It could be, stop trading. The window is closed. Couldn't it? Sure, I suppose so. Had the window closed when he traded? The window was closed when he traded. Does the record show that? I believe that it does, because he possessed material nonpublic information. This record doesn't show that he traded before the window closed? Well, there was the – I think perhaps what Your Honor is getting at is – Maybe I'll stop asking you questions, because the questions I think can be answered yes or no. You think they can be answered a different way. Well, I want to make sure that I'm answering the question exactly precisely, and the announcement – See, I'm not suggesting that what he did was not something that he should have admitted, but I'm wondering if he had some basis to delay his admitting it until he saw whether what he did was going to be considered criminal, because you had a trading window. It was open. He traded. It closed. He didn't trade, unless I'm mistaken about the record. And I read it with some care, because what you want to do is say you can't downward depart in a situation where someone admits guilt at the last minute. You consider the last minute. And the last minute normally is when the government is put to additional expense. And in this situation, I'm asking you how could the government have been put to additional expense, because the record is clear as to what happened. And the facts aren't in dispute, are they? Well, the facts of Mr. Previtt's mens rea, his intent, is indeed in dispute. His intent is in dispute. That's correct. But the facts of what was done so that a court or jury can determine the issue before the court was not in dispute, was it? The other facts are not in dispute. That's correct. All right. Go ahead. With regard to Mr. Previtt's intent, not only was that contested throughout trial, but this is not the rare circumstance, the rare case that this Court and the guidelines talk about, where the individual, even though he takes the case to trial, is very clear that he accepts responsibility based primarily on pretrial statements in conduct. Indeed, if this Court is to look at the pretrial statements in conduct, that would be looking at Mr. Previtt's testimony and the evidence he put forth to the SEC, in which he not only denied his intent to defraud, but also stated or offered to the SEC a manufactured long-term investment trading plan in which he sought to show that his trading was for an entirely independent purpose. Going to the issue of rareness, wasn't this aberrant behavior? Had he ever done anything like this before? Did he have any criminal record whatsoever? No. He had never done this before, and he had no criminal record. Why isn't it – why isn't this, then, aberrant behavior? Well, as the working case, which is a 2009 circuit case, says, you not only have to look at past behavior, but you also have to look at the likelihood of recurrence. In this case, we know that it did recur because Mr. Previtt testified nearly one year after his dishonest conduct of the insider trading when he testified dishonestly to the SEC. He said that the reason he pleaded not guilty was that he was going to contest the tipping charge, say, tipping charge, the other charge against him, which he was acquitted of. Once he was acquitted of that, then he acknowledged responsibility. Did he not? Well, no, I don't think so. First of all, he could have – he could have pled guilty to the tipping charge before going to trial on the other issues, and he elected not to. Other defendants do that. Because he said he was innocent on the tipping charge, and he was found innocent. I'm sorry. He could have pled guilty on the insider trading charge. I misspoke. And taken the tipping charge to trial. His argument was if he pled guilty to one, that would influence the other, and therefore he wanted to wait to see. And when he was acquitted, then he acknowledged the other. Isn't that the series of events? Well, that is what he says. Putting aside the fact that some defendants will plead guilty to a count on which they are admitting the facts and intent and so forth, and then take another charge to trial. What he did here was at sentencing, even the district court judge said to him, you cannot say – your attorney cannot say what you need to say here in order to get a downward adjustment. The district judge led him on. The district judge absolutely led him on. That's entirely correct. He was in charge of the trial, and that was his prerogative, was it not? Well, sure it was, although the government would contend that that is another example of clear error here. Because then when the defendant did say what the district court was asking him to say for acceptance, he did so still equivocally, not saying I intended to defraud, but saying, you know, well, the window was open and, you know, I'm sorry now, but, you know, the window was open. In other words, still saying I didn't think I was doing anything wrong. I did not intend to defraud. I understand. You know, you have only a minute left. I'm sorry. We impose it. Do you want to save it for rebuttal? I would like to. Thank you, Your Honor. Good morning. My name is Tom Nolan. I represent Mr. Previtt, and I represented him in trial below. I think it's important to remember the standard, to remind the Court of the standard I don't believe the government proposed the correct standard, clear error in both situations, clear error in the acceptance of responsibility, and clear error in the findings of fact necessary to support the aberrant behavior. And I think that since we're looking at the guidelines when it was the totality of circumstances for aberrant behavior, and if we look at the working case, I think that once the Court makes the determination of the facts to support the aberrant behavior, that using the clear error standard and not a de novo standard is appropriate. You know what the government's concern is, though, don't you? Yeah. The government's concern is that we've got guidelines. The guidelines define what a district judge could do. This district judge didn't want to do what the guidelines said he must do, and he could find solid reason not to do it if there was an admission, which there wasn't, until he made it perfectly clear that something needs to be said that hasn't been said, and I'm going to recess for 10 minutes before I pronounce, and then I'll hear whether you have anything to say to me. And he did that, and he left, and he did have something to say to him, and the Court went down. And that's what the government's upset about. The government thinks we had the guidelines, he hadn't done it, school's out. But what's so interesting is, is that throughout the trial and throughout the proceedings, he represented to the Court the exact kind of person that this record shows he was, the exact circumstances, the unusual circumstances of this particular week. This was the end of the bubble. This was March, what, March 3rd, I think, that week. And the fact that he's working in a company that's trying to sell him stock, and that he thinks highly of that company. Did he realize his gain? No, he did not realize his gain. He actually sold 10, I'm sorry, bought 10, and he had a number of shares. And he sold five about three weeks later, so he realized some gain, but held on to the rest of the very end. I don't think the record showed that he realized 500 plus thousand. You've got to sell to have a gain. He didn't sell. He froze his assets. He's paid all of his debts through this. And kept, he was a highly respected engineer. He wasn't in sales. Certainly, he took advantage of a serious error by the president of the company, who had no consequences from this, rather than the employee. It was only a serious error if the employees were going to misuse information, which they got by being insidious. Well, you know, as I said to the jury, I don't think the employee should be allowed to trade at all in this kind of industry at that time, because they're constantly in possession of material information. He admitted, when he testified before the SEC, he said, you know, if I were an ordinary person on the street, I'd want to have this information. I mean, he told them that at his testimony before the SEC. He said for him it's more complicated, because he really did have questions about whether it was or was not a good deal, et cetera. But he's in possession of far more information. And it's a constant possession of information. What authority – what's the best case that you've got that suggests that a person can deny responsibility throughout a trial and then accept responsibility after that? I think there's only one case that reverses a granting of acceptance of responsibility. In the Ninth Circuit, all other cases deal with whether it was an abuse of discretion not to grant acceptance of responsibility. I can't give you the exact case right now, other than the fact that not only was he acquitted of the tipping charges in the criminal context, he was acquitted of them in the civil trial as well. He did not testify at trial. He voluntarily froze his assets. He voluntarily went to the SEC. He voluntarily testified. He did nothing through the trial, other than the Court, I suppose, commenting that counsel aggressively defended him. But other than that, he did nothing. He did nothing to, in fact, challenge any of the factual assertions and really had very little choice but to go to trial. I also think that part of the purpose of the – it may not be the whole purpose, but a part of the purpose of the acceptance of responsibility adjustment is if a person is saving the government the burden of going to trial and they're shortening the proceedings. It's part of the – If a person goes to trial and becomes contrite only at sentencing, you may get – there may be some value to that, but there's no – there's no state of all the court time and government time and defense time. Again, he's not in a position to do much about that under the circumstances of this case. There is authority. I don't have it right at the top as far as the case law that says you do not need – you can go to trial and get acceptance of responsibility. Go to trial if the offense is something that you admit you did it, but you claim something like entrapment. Like, yes, I did this unlawful act, but I was entrapped, and that has to be tried. But what about this case puts it in the category where you can go to trial and take your best shot and then accept responsibility at sentencing? That the facts were not in dispute, that all the facts – there was not a fact in dispute that that was challenged. We did challenge the value and the time that it became public as well as whether or not the trading window was appropriate at the time, that the – that we had no choice because of the other charges pending, basically, that we couldn't resolve the case otherwise. It would have been a case that would have been appropriate for resolution had that not been the case, had there not been charges that involved significant allegations of tipping. I also think that the decision that Mr. Previtt had to make when he was given the 10-minute recess was not an easy decision for him. I think he showed a tremendous amount of emotion and of remorse and of guilt, and I think that his background of his upbringing and where he was, you know, demonstrated that, and I think that was very hard for him. He – Excuse me, counsel. Assuming this is true, doesn't the PROTECT Act require that the district court list its reasons for downward departure from aberrant – from an aberrant client, and wouldn't we have to – assuming we agree with you, wouldn't we have to remand this to the district court judge to state specifically his reasons why he did this? That – that might be appropriate were it not for the provisions of 37 – 3742G2, which says that if the court makes a finding – I think it says that if the court makes a finding that there was an illegal sentence, that the trial court is mandated to give the sentencing under the guidelines. Unless you specifically limit to remand for specific reasons and the applicability of G2 is not applicable, then we would have no problem with that. But we're concerned that under G2, the trial court then would be mandated to give the – the sentence under the guidelines. I also think the PROTECT Act says that – that it does not preclude you from finding that – or from not finding that there was an – there was a clear error. Were there any findings in the record with respect to the judge's assessment that this was aberrant behavior? I couldn't find any, and maybe I just missed them. Well, no specific written findings, but the – but the transcript reflects the judge's comments, which fall into the category of – I understand about the judge's comments. Right. But I thought the PROTECT Act required specific findings. It does, but it also, I think, gives the court the opportunity to affirm without specific findings. In other words, I don't think they are required, but it – but it doesn't preclude this court from affirming the sentence as long as the – the court could have found – you know, basically findings could have found them without writing them down. In other words, I don't think it's – As long as the record reveals sufficient – I believe that that is the law, yes, as long as the record reveals sufficient findings under the PROTECT Act, even though it mandates the writing of specific findings of fact. Is that the 374 – would you give me the specific reference that you were making? I was making reference to 3742G2, and that says that if this court finds that the sentence was not legal – in other words, there was something wrong, and not legal could be there weren't written findings. All right. The concern would be that they have to give – they cannot then re-sentence specifically giving the findings. That's our concern. I don't see how that supports your proposition that we don't need findings, that we can affirm. Oh, that doesn't support that proposition, no. I can't give you the citation that – and I think it's in my brief that, in fact, even though there are not written findings, the court, from the record, can find that there was sufficient evidence to support the judge's findings of fact on aberrant behavior. That's what I was trying to say. I've used up your time.  Thank you. Two things. First of all, the Ninth Circuit held in Chastain that where the defendant had attacked the government's proof on willfulness, this was a tax fraud case, which is a specific factual element of the tax fraud statute. He was not in one of the rare situations that would qualify him for a reduction under the guideline for acceptance of responsibility. The second point is that with regard to the aberrant conduct or aberrant behavior departure, remand is not necessary here based on the cold record. In working, this court cited Bradstreet, which was a Tenth Circuit case, cited the language that one convicted of criminal dishonesty, as insider trading is, is not entitled to an aberrant conduct departure if he has testified dishonestly about his criminal conduct. That Mr. Previtt did in front of the SEC. Unless the court has any further questions, I'll submit. What do you mean when you say testified dishonestly? That it didn't happen? Or they had a different reason for why it happened? I'm sorry. You said he testified dishonestly. Is your recollection of record that he testified that I didn't trade on the date that I was accused of trading? No. You said testified dishonestly. I'm asking you, what specifically do you mean? That he did not intend to defraud. Oh, I see. Thank you. The case will be submitted. We thank both counsel for their excellent arguments. Thank you. versus Clark County is submitted on briefs without argument. Ferreira Chacobo of the Ashcroft is submitted on briefs without argument. And the next case for argument is Tanata v. Philip Norris. Now, we have this case up in the air.
judges: D.W. Nelson, Kleinfeld, Gould